

# IN THE
## TENTH COURT OF APPEALS

———————

**No. 10-18-00359-CR**
**No. 10-18-00360-CR**

**HARRY DONALD NICHOLSON, JR.,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

———————

**From the 13th District Court**
**Navarro County, Texas**
**Trial Court No. D37998-CR & D37996-CR**

———————

## OPINION

———————

In appellate cause numbers 10-18-00360-CR and 10-18-00359-CR, appellant, Harry

Nicholson Jr., challenges his convictions for evading arrest or detention with a vehicle

and aggravated assault on a public servant. *See* TEX. PENAL CODE ANN. § 22.02(a),

(b)(2)(A) (West 2019); *see also id.* § 38.04(a), (b)(2)(A) (West 2016).  Specifically, Nicholson

contends that:  (1) the evidence is legally insufficient to show that he knew his attempted

detention was lawful; (2) the evidence is legally insufficient to show that he was aware

of, but consciously disregarded, a substantial and unjustifiable risk that a police officer would be injured; (3) he was egregiously harmed by the failure to charge the jury that it needed to find that he knew he was being lawfully detained with respect to the evading-arrest-or-detention-with-a-vehicle allegation; and (4) he was egregiously harmed by the failure to charge the jury that it needed to find that he knew the officer was attempting to arrest or detain him. Because we conclude that Nicholson was egregiously harmed by the failure of the jury charge to instruct the jury that it needed to find that Nicholson knew the officer was attempting to arrest or detain him, but find the evidence is sufficient to support a conviction for evading arrest or detention with a vehicle, we reverse Nicholson's conviction for evading arrest or detention with a vehicle and remand for a new trial in appellate cause number 10-18-00360-CR.[1] And because we hold that the evidence is sufficient to support Nicholson's conviction for aggravated assault on a public servant, we affirm Nicholson's conviction in appellate cause number 10-18-00359-CR.

## I. EVADING ARREST OR DETENTION WITH A VEHICLE AND THE JURY CHARGE

In his third and fourth issues, Nicholson contends that he was egregiously harmed by the failure to charge the jury that it needed to find that he knew he was lawfully detained by a peace officer. The State concedes that Nicholson was egregiously harmed by the charge, but only to the extent that the charge failed to include the element that

---

[1] This case was orally argued, and the State has filed a post-submission brief accompanied by a motion for leave to file the brief. We grant the State's motion and have considered the State's post-submission brief.

Nicholson knew that the officer was attempting to arrest or detain him. We agree with the State that Nicholson was egregiously harmed by the failure of the charge to include the element that Nicholson knew the officer was attempting to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04(a); *see also Celis v. State*, 416 S.W.3d 419, 423 (Tex. Crim. App. 2013) ("A charge that does not set out all of the essential elements of the offense is fundamentally defective."); *Jackson v. State*, 718 S.W.2d 724, 726 (Tex. Crim. App. 1986) ("We conclude that the defendant's knowledge that a police officer is trying to arrest him is an essential element of the offense of evading arrest under the statute."). Accordingly, we sustain Nicholson's fourth issue. Because we sustain Nicholson's fourth issue and grant him the relief to which he sought, a reversal and remand of this conviction for a new trial, we need not address Nicholson's third issue pertaining to his knowledge of the lawfulness of the arrest or detention. *See* TEX. R. APP. P. 47.1, 47.4.

## II. SUFFICIENCY OF THE EVIDENCE SUPPORTING EVADING ARREST OR DETENTION WITH A VEHICLE

In his first issue, Nicholson argues that his conviction for evading arrest or detention with a vehicle is not supported by sufficient evidence because the State failed to show that he knew that his attempted detention was lawful. Specifically, Nicholson asserts that the evading-arrest statute requires the State to prove that a defendant knows three things at the time he intentionally flees: (1) that the person from whom he is fleeing is a peace officer; (2) that the peace officer was attempting to arrest or detain the defendant; and (3) that the attempted arrest or detention was lawful.

## A.    Standard of Review

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.
>
> We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v.*

*State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

## B.     Discussion

In this issue, Nicholson requests that we interpret section 38.04(a) of the Penal Code in such a way that requires the State to prove that Nicholson knew that the attempted arrest or detention was lawful.

Statutory construction is a question of law, and we review the record de novo. *Ramos v. State*, 303 S.W.3d 302, 306 (Tex. Crim. App. 2009). In construing a statute, we must "seek to effectuate the 'collective' intent or purpose of the legislators who enacted the legislation." *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We look first to the statute's literal text, and "we read words and phrases in context and construe them according to the rules of grammar and usage." *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008). We must "presume that every word in a statute has been used for a purpose and that each word, phrase, clause, and sentence should be given effect if reasonably possible." *State v. Hardy*, 963 S.W.2d 516, 520 (Tex. Crim. App. 1997). Only if the statutory language is ambiguous, or leads to absurd results that the Legislature could not have possibly intended, may we consult extra-textual sources. *Boykin*, 818 S.W.2d at 785.

*Harris v. State*, 359 S.W.3d 625, 629 (Tex. Crim. App. 2011).

Section 38.04(a) provides that: "A person commits an offense if he intentionally flees from a person he knows is a peace officer or federal special investigator attempting

lawfully to arrest or detain him." *See* TEX. PENAL CODE ANN. § 38.04(a). Contrary to Nicholson's assertion, many Texas cases have come to the conclusion that it is not necessary for the State to prove that the defendant knew that the detention was lawful. *See, e.g., Lovington v. State*, No. 07-16-00109-CR, 2016 Tex. App. LEXIS 13215, at **5-6 (Tex. App.—Amarillo Dec. 13, 2016, no pet.) (mem. op., not designated for publication) ("Rather, the knowledge aspect of the crime relates to whether the accused knew the person to whom he refused to yield was a peace officer who was trying to detain him. . . . It is nonsensical to suggest that an accused may avoid conviction simply because he can unilaterally analyze the situation and conclude (irrespective of any education in the law or 4th Amendment jurisprudence) that the peace officer had no basis to detain him. And, we opt not to construe § 38.04(a) in such an absurdist way."); *Mitchell v. State*, Nos. 05-12-00876-CR, 05-12-00877-CR, & 05-12-00878-CR, 2013 Tex. App. LEXIS 9317, at **12-13 (Tex. App.—Dallas July 26, 2013, no pet.) (not designated for publication) ("Otherwise, courts have generally construed the inclusion of the word 'lawfully' in § 38.04(a) to mean that the attempted arrest or detention must be lawful—not that the defendant must know that the attempted arrest or detention is lawful. . . . The State did not have to prove that appellant knew the attempted arrest or detention was lawful."); *Loewe v. State*, No. 03-10-00418-CR, 2011 Tex. App. LEXIS 865, at *9 n.3 (Tex. App.—Austin Feb. 2, 2011, pet. dism'd) (mem. op., not designated for publication) ("It was not necessary for the State to prove that appellant knew that the detention was lawful."); *Johnson v.*

*State*, No. 13-05-00648-CR, 2007 Tex. App. LEXIS 2706, at *8 (Tex. App.—Corpus Christi Apr. 5, 2007, no pet.) (mem. op., not designated) ("It is not required that the State prove that the defendant had knowledge of the legal basis for the attempted detention or arrest. . . . Thus, appellant's interpretation of section 38.04 as requiring the State to prove that appellant was aware of the felony warrant is clearly incorrect."); *Etheridge v. State*, No. 08-12-00337-CR, 2014 Tex. App. LEXIS 10880, at *8 (Tex. App.—El Paso Oct. 1, 2014, no pet.) (mem. op., not designated for publication) ("Section 38.04(a) requires proof that the defendant knows the police officer is attempting to arrest or detain him, and it requires proof that the attempted arrest or detention was lawful, but it does not require proof that the defendant knew his arrest or detention was lawful.").

In support of the contention that the State need not prove that the defendant knew his arrest or detention was lawful, each of these cases cite, either directly or indirectly, decisions from the Court of Criminal Appeals in *Hazkell v. State*, 616 S.W.2d 204, 205 (Tex. Crim. App. 1981) and *Jackson v. State*, 718 S.W.2d 724, 729 (Tex. Crim. App. 1986) or a decision from the Dallas Court of Appeals in *Johnson v. State*, 864 S.W.2d 708, 723 (Tex. App.—Dallas 1993), *aff'd*, 912 S.W.2d 227 (Tex. Crim. App. 1995). However, each of these cases were decided prior to September 1, 1994, when the evading-arrest statute contained an exception for unlawful arrests or detentions. *See* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, sec. 38.04(a), 1993 Tex. Sess. Law Serv. 3586, 3667 (current version at TEX. PENAL CODE ANN. § 38.04(a)) (adding the word "lawfully" as an element of the offense of

evading arrest or detention) (effective date Sept. 1, 1994); *see also Hazkell*, 616 S.W.2d at 205 (noting that the prior version of section 38.04 contained an exception for unlawful arrests or detentions); *Johnson*, 864 S.W.2d at 722 (stating that the prior version of section 38.04 "makes it an offense to flee from an officer attempting to arrest or detain him" and noting that whether or not an arrest or detention is lawful or unlawful is an exception).

Furthermore, it would appear that the more-recent interpretations of section 38.04(a) ignore the Legislature's inclusion of the word "lawfully" in the phrase describing the peace officer or federal special investigator that the defendant must know is attempting to arrest or detain him. *See* TEX. PENAL CODE ANN. § 38.04(a); TEX. GOV'T CODE ANN. §§ 311.011(a) ("Words and phrases shall be read in context and construed according to the rules of grammar and common usage."), 311.021(2) (West 2013) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective."); *see also State v. Webb*, 12 S.W.3d 808, 811 (Tex. Crim. App. 2000) ("Under our approach to statutory interpretation, we look to the literal text of the statute for its meaning, and we ordinarily give effect to that plain meaning, unless application of the statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, or if the plain language is ambiguous."); *Ex parte Levinson*, 160 Tex. Crim. 606, 608, 274 S.W.2d 76, 78 (1955) ("It must be kept in mind, also, that in construing a statute or in seeking to ascertain the legislative intent in enacting a statute, the courts must not enter the field of legislation and write, rewrite, change, or add to a law.").

Nevertheless, none of this matters under the facts in this case. As noted above, we analyze the sufficiency of the evidence under a hypothetically-correct jury charge. *See Malik*, 953 S.W.2d at 240. Under either the State's or Nicholson's interpretation of the hypothetically-correct jury charge, Nicholson's conviction for evading arrest or detention with a vehicle can be affirmed.

Bobby Frazier testified that he is a cashier at a Shell gas station located at 1950 Martin Luther King Boulevard in Corsicana, Texas. On the evening in question, Frazier observed Nicholson sitting in his pickup truck while parked at the gas station. Frazier believed it to be odd that Nicholson "had been out there for quite some time and he was throwing Kleenexes out of the driver side window. I mean a lot of Kleenexes." Frazier later clarified that Nicholson had been inside the parked pickup truck for "a couple of hours." Because of his concern for Nicholson, Frazier called the police.

Alexander Hayes Layfield, an officer with the Corsicana Police Department, was the first to arrive at the scene. Driving in a marked police vehicle and wearing his police uniform, Officer Layfield made contact with Nicholson to conduct a welfare check. In his probable cause affidavit, which was admitted into evidence and corroborated by trial testimony, Officer Layfield noted the following:

> I went to the driver's side of the truck and knocked on the driver's side window to get the subject's attention, and the subject rolled the window down to speak to me. At this point, I asked the subject if he was alright, and he advised that he was. All I knew about the subject at this point was that he was an older white male. I then asked the subject to step out of the truck to speak with me, but he did not want to exit the vehicle. I was finally

able to get the subject to open his door to speak with me, but he would still not exit the vehicle. Due to the call type, I did not forcibly remove the subject from the vehicle at this time, but I did obtain his information. The subject identified himself as Don Nicholson . . . and he stated that his Texas driver's license number was . . . . Before notifying me of the return for Nicholson's TXDL, dispatch began to have backup units enroute to my location which I assumed was due to Nicholson having active warrants. While this was going on, Nicholson was actively trying to shut the door of his vehicle, but I was standing in the driver's side doorway to prevent that. . . . I was notified by dispatch that Nicholson had active felony warrants which included resisting officers and evading in a vehicle out of Van Zandt County. Nicholson was also said to be considered dangerous.

At this point, I knew that I needed to get Nicholson out of the vehicle due to the active warrants for his arrest. Nicholson had a lot of tissues on the ground next to his driver's side door, which he told me he was going to pick up. I asked him if he would get out and pick the tissues up so that I could witness him doing so. Nicholson agreed to pick up the tissue, and he turned his truck off and exited. I allowed Nicholson to pick the tissue up off of the ground and throw the tissue away in a trash can in front of the gas station. Nicholson began to walk hastily back to his truck, and I asked him to talk with me for a minute, but he did not seem to want to talk. Nicholson then took his key out of his pocket and was holding it in his right hand in a manner to cause me to feel alarmed of his intent. I asked Nicholson to put his key away so that he was not holding it towards me, and he did. I made the decision to try to handcuff Nicholson before backup units arrived due to my belief that he was going to either fight me or flee the scene in his vehicle.

As I pulled my handcuffs out and told Nicholson to place his hands behind his back, he began to pull away from me. I had my handcuffs in my right hand and my left hand was holding Nicholson's left wrist. I began giving Nicholson verbal commands to place his hands behind his back, but he pulled his left arm in close to his body to prevent me from handcuffing him. I tried to talk Nicholson down from resisting so that I could handcuff him by advising him that he was being detained and trying to assure him that everything was going to work out. Nicholson was resisting me hard at this point with his left arm to the point where I was not able to get his arm behind his back. I was attempting to stall until backup arrived at this point because while I was holding his left wrist, I did not notice that he had gotten

his truck key back out into his right hand. Nicholson opened the door to his truck and began to try to get into his truck. Due to the threat of the key in Nicholson's right hand and me having hold of his left arm, I could not safely use physical force to pull Nicholson away from the truck without a backup unit on scene. I still had a hold of Nicholson's left arm, but he pulled away just enough to get into the truck. I began to forcefully pull Nicholson's arm because Nicholson got the key into the ignition of the truck right when he jumped in. Nicholson got the truck started and I was in between holding on and letting go due to the fear of being ran over by Nicholson. Nicholson got the truck in reverse and began backing up very fast with me still in the doorway of the truck. I managed to get out of the way, but Nicholson was not going to stop if I did not.

On cross-examination, Officer Layfield acknowledged that, when he first attempted to handcuff Nicholson, he did not tell Nicholson that he was under arrest, though he noted in his testimony that littering is a criminal offense; that Nicholson had outstanding felony warrants; and that Nicholson also failed to present a valid Texas driver's license upon request, which is also a criminal offense. Further, all of these criminal offenses subjected Nicholson to a lawful arrest. On re-direct examination, Officer Layfield testified that he did not have to inform Nicholson of the articulable basis for the detainment, because the disclosure of this information increases the likelihood of the subject escalating the situation and causing harm to the officer, the public, or himself.

In addition to the foregoing, Officer Michael Brooks of the Corsicana Police Department noted that he inventoried Nicholson's truck and found contraband in the form of various glass pipes inside the center console of the vehicle. These types of glass pipes are usually used in the consumption of drugs.

As stated above, Nicholson challenges the culpable-mental-state element of the evading-arrest offense. Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991), *overruled on other grounds by Fuller v. State*, 829 S.W.2d 191 (Tex. Crim. App. 1992); *see Owens v. State*, 549 S.W.3d 735, 741 (Tex. App.—Austin 2017, pet. ref'd). A jury may infer that a defendant intends the natural consequences of his acts. *Herrera v. State*, 526 S.W.3d 800, 810 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Ruffin v. State*, 270 S.W.3d 586, 591-92 (Tex. Crim. App. 2008)). A jury may also infer a defendant's knowledge or intent from any facts tending to prove its existence, including the method of committing the crime and the accused's acts, words, and conduct. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

In the instant case, Officer Layfield testified that Nicholson committed numerous criminal offenses, including littering, failure to present a valid Texas driver's license, and outstanding warrants. Additionally, Officer Brooks recounted that Nicholson committed another criminal offense by being in possession of contraband in the form of glass pipes that are usually used in the consumption of drugs. All of these criminal offenses could have resulted in Nicholson being lawfully arrested.

"[P]ersons are presumed to know the law and ignorance of the law excuses no man." *Hayes v. State*, 672 S.W.2d 246, 248 (Tex. App.—Beaumont 1984, no pet.) (citing

*Crain v. State*, 69 Tex. Crim. 55, 153 S.W. 155 (1913)); *see, e.g., Burns v. State*, No. 07-15-00229-CR, 2016 Tex. App. LEXIS 3405, at **9-10 (Tex. App.—Amarillo Apr. 1, 2016, pet. ref'd) (mem. op., not designated for publication) ("Indeed, those within the State are charged with constructive knowledge of the criminal law."). Therefore, even under Nicholson's hypothetically-correct jury charge, which would require the State to prove that Nicholson knew he was being lawfully arrested, the jury could rationally infer from the evidence that Nicholson committed the aforementioned offenses and knew or should have known that he was subject to a lawful arrest. *See Hayes*, 672 S.W.2d at 248; *see also Burns*, 2016 Tex. App. LEXIS 3405, at **9-10; *Fassauer v. State*, No. 07-08-00319-CR, 2010 Tex. App. LEXIS 4277, at *2 (Tex. App.—Amarillo June 7, 2010, no pet.) (mem. op., not designated for publication) ("In general, absent extraordinary circumstances[,] an arrest supported by probable cause or a warrant is lawful." (citing *Haight v. State*, 103 S.W.3d 498, 507 (Tex. App.—San Antonio 2003), *rev'd on other grounds*, 137 S.W.3d 48 (Tex. Crim. App. 2004))).

Accordingly, viewing the evidence in the light most favorable to the verdict, we hold that the jury, as the trier of fact, rationally could have inferred that Nicholson knew that Officer Layfield was attempting lawfully to arrest or detain him and that Nicholson used a vehicle while in flight. *See Ruffin*, 270 S.W.3d at 591-92; *Hart*, 89 S.W.3d at 64; *Hernandez*, 819 S.W.2d at 810; *Owens*, 549 S.W.3d at 741; *see also Jackson*, 443 U.S. at 319, 99. S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33. We therefore conclude that the evidence

is sufficient to support Nicholson's conviction for evading arrest or detention with a vehicle. *See* TEX. PENAL CODE ANN. § 38.04; *Jackson*, 443 U.S. at 319, 99. S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33.

And to the extent that the evidence conflicts, we, once again, state that the resolution of conflicts in the evidence is within the province of the jury, and we defer to that resolution. *See Zuniga*, 551 S.W.3d at 733 (citing *Merritt*, 368 S.W.3d at 525). Accordingly, we overrule Nicholson's first issue.

### III.    AGGRAVATED ASSAULT ON A PUBLIC SERVANT

In his second issue, Nicholson argues that the evidence is legally insufficient to show that, in unsuccessfully trying to slowly squeeze by a police vehicle, he was aware of, but consciously disregarded, a substantial and unjustifiable risk that a police officer would be injured. We disagree.

In appellate cause number 10-18-00359-CR, Nicholson was charged by indictment with,

> intentionally, knowingly and recklessly caus[ing] bodily injury to Michael Sean Frasier [sic], hereafter styled the complainant, by striking the said Sean Frasier [sic] with an automobile, and the defendant did then and there use or exhibit a deadly weapon, to-wit:  an automobile, during the commission of said assault, and the defendant did then and there know that the complainant was then and there a public servant, namely a Corsicana Texas police officer, and that the complainant was then and there lawfully discharging an official duty, namely responding to assist another police officer.

On appeal, the parties agree that only the reckless culpable mental state is relevant in this issue.

Intent may be inferred from circumstantial evidence, such as the acts, words, and conduct of the defendant.  *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004); *see also Hart*, 89 S.W.3d at 64.  "'[A]t the heart of reckless conduct is conscious disregard of the risk created by the actor's conduct[.]'"  *Williams v. State*, 235 S.W.3d 742, 752 (Tex. Crim. App. 2007) (quoting *Lewis v. State*, 529 S.W.2d 550, 553 (Tex. Crim. App. 1975)).  In addressing the culpable mental state of recklessness under section 6.03(c) of the Penal Code, the factfinder must examine the defendant's conduct to determine whether:

(1) the alleged act or omission, viewed objectively at the time of its commission, created a 'substantial and unjustifiable' risk of the type of harm that occurred;

(2) that risk was of such a magnitude that disregard of it constituted a gross deviation from the standard of care that a reasonable person would have exercised in the same situation (i.e., it involved an 'extreme degree of risk, considering the probability and magnitude of the potential harm to others');

(3) the defendant was consciously aware of that 'substantial and unjustifiable' risk at the time of the conduct; and

(4) the defendant consciously disregarded that risk.

*Williams*, 235 S.W.3d at 755-56; *see* TEX. PENAL CODE ANN. § 6.03(c) (West 2011).  When determining whether an act or omission involves a substantial and unjustifiable risk, we consider the events and circumstances from the viewpoint of the defendant at the time the events occurred.  *Id.* at 753.  The State need not prove awareness of a specific risk to a

specific individual. *See, e.g., Trepanier v. State*, 940 S.W.2d 827, 829 (Tex. App.—Austin 1997, pet. ref'd).

The record reflects that Nicholson was about to be arrested for an active warrant. When Officer Layfield attempted to effectuate the arrest, Nicholson forcefully pulled away from the officer, entered the pickup truck, and fled. Corsicana Police Officer Heath Hayes recounted that, as he pulled into the parking lot of the gas station, he observed Officer Layfield inside the door of Nicholson's vehicle while Nicholson got into the vehicle and put the vehicle in reverse. Nicholson initially drove around the back of a business, through a drive-through lane. As Nicholson drove around to the front of the business, another police vehicle driven by Officer Frazier entered the parking lot. Thereafter, Nicholson drove his pickup truck into the driver-side door of Officer Frazier's patrol unit.

The jury was shown a dash-camera video, which showed Nicholson's brake lights were off at the moment before his pickup truck collided with Officer Frazier's patrol unit. In other words, Nicholson had disengaged the brakes on his pickup truck immediately before the collision. Officer Hayes stated that, after the collision, Officer Frazier's patrol unit continued to bounce, indicating that Nicholson was "[s]till trying to leave." Officer Frazier recalled that, after the collision, he could feel the door panel of his patrol unit vibrating and he could hear Nicholson's "engine revving up like it was still trying to go." As a result of the collision, Officer Frazier was injured.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that a reasonable factfinder could infer that Nicholson's conduct was reckless. Fleeing from the police in a gas-station parking lot, disengaging the brakes on his pickup truck, and purposefully revving his engine and ramming Officer Frazier's patrol unit created a substantial and unjustifiable risk that someone would be injured. *See Sierra v. State*, 280 S.W.3d 250, 256 (Tex. Crim. App. 2009) (concluding that a failure to apply brakes before a collision is evidence of recklessness); *see also Black v. State*, No. 12-05-00130-CR, 2006 Tex. App. LEXIS 7581, at **9-10 (Tex. App.—Tyler Aug. 25, 2006, no pet.) (mem. op., not designated for publication) ("But from these facts, the jury might reasonably infer recklessness; that, because of the warrants, Appellant was so desperate to evade arrest that, knowing the officer was dismounting behind him, he abandoned his vehicle on an incline and in drive, consciously disregarding the substantial and unjustifiable risk of injury to Officer Mulligan."). The record does not support Nicholson's contention that he was merely "trying to slowly squeeze by." Additionally, the record indicates that Nicholson had been using cocaine prior to this incident, and intoxication is also a factor that weighs in favor of a finding of recklessness. *See Gill v. State*, 981 S.W.2d 517, 519 (Tex. App.—Beaumont 1998, no pet.) ("We acknowledge that speeding is not necessarily reckless conduct. Speeding while intoxicated, however, is reckless conduct.").

Accordingly, a reasonable jury could determine that this substantial and unjustifiable risk was a gross deviation from the standard of care that a reasonable person

would exercise in the same situation; that Nicholson was aware of that risk at the time of his conduct; and that he consciously disregarded that risk. *See Williams*, 235 S.W.3d at 755-56. As such, we hold that the evidence is sufficient to support his conviction for aggravated assault on a public servant. *See* TEX. PENAL CODE ANN. § 22.02(a); *Jackson*, 443 U.S. at 319, 99. S. Ct. at 2789; *Zuniga*, 551 S.W.3d at 732-33; *see also Hernandez v. State*, No. 07-11-0240-CR, 2013 Tex. App. LEXIS 1007, at *8 (Tex. App.—Amarillo Feb. 4, 2013, no pet.) (mem. op., not designated for publication) ("Notwithstanding his inexperience as a driver, he attempted to flee the scene in an SUV by driving it through a space between Lieutenant Parker's unit and a camper and pickup parked along a residential street which proved to be too narrow. It is inconsequential that he did not intend to strike Lieutenant Parker's unit or cause him injury. His actions, at the very least, were reckless."). We overrule Nicholson's second issue.

## IV. CONCLUSION

Because we determined that the charge pertaining to the conviction for evading arrest or detention with a vehicle contained error and egregiously harmed Nicholson, but nevertheless find the evidence sufficient to support Nicholson's conviction for this offense, we reverse Nicholson's conviction in appellate cause number 10-18-00360-CR and remand for a new trial. *See Blanson v. State*, 107 S.W.3d 103, 107 (Tex. App.— Texarkana 2003, no pet.) ("If the evidence is legally insufficient to support a conviction . . ., we must render a judgment of acquittal, and the Constitutional

prohibitions against double jeopardy will prohibit a retrial.  If, however, we find the evidence legally sufficient and we reverse for charge error, we may remand the case for a new trial." (internal citations omitted)).  Furthermore, because we have concluded that the evidence is sufficient to support Nicholson's conviction for aggravated assault on a public servant, we affirm the judgment of the trial court in appellate cause number 10-18-00359-CR.

JOHN E. NEILL<br>
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Neill
      (Chief Justice Gray dissenting with an opinion)
10-18-00359-CR:  Affirmed
10-18-00360-CR:  Reversed and remanded
Opinion delivered and filed September 4, 2019
Publish
[CR25]

